# In the United States Court of Federal Claims

No. 09-114L

(Filed: October 12, 2011)

```
*****************************************  *
                                          *
                                          *
JOHNNY GREGORY, et al.,                    *    National Trails System Act,
                                          *    16 U.S.C. § 1241 (2006);
                                          *    Fifth Amendment Taking
                       Plaintiffs,         *    Claims; Plaintiffs' Property
                                          *    Interests Under Mississippi
v.                                         *    Law; Easement or Fee
                                          *    Simple Title; Scope of
THE UNITED STATES,                         *    Easement; Abandonment.
                                          *
                       Defendant.          *
                                          *
*****************************************  *
```

*Thomas S. Stewart*, with whom were *Elizabeth G. McCulley*, *Brent Baldwin, J. Robert Sears* and *Steven M. Wald*, Baker Sterchi Cowden & Rice, LLC, St. Louis and Kansas City, Missouri, for Plaintiffs.

*Joshua A. Doan*, with whom was *Ignacia S. Moreno*, Assistant Attorney General, Environmental & Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

WHEELER, Judge.

This case involves a former Mississippi railroad corridor that has been converted into a public recreational trail pursuant to the Trails Act, 16 U.S.C. § 1247(d). Plaintiffs are 257 class members, making 331 claims, each pertaining to a separate parcel of land. Plaintiffs allege that they own a reversionary interest in the corridor taken when the Surface Transportation Board issued a Notice of Interim Trail Use, pursuant to the Trails

Act, authorizing the Railroad[1] to negotiate an agreement to preserve the corridor for future rail service while allowing interim use of the corridor as a public trail.  Plaintiffs seek just compensation for a taking of their reversionary interests.

Plaintiffs filed their complaint in this Court on February 24, 2009, and on October 5, 2009, the Court granted Plaintiffs' motion to certify the case as a class action pursuant to Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC").  Between April 8, 2011 and July 21, 2011, the parties filed motions and cross-motions for summary judgment, addressing all 331 claims.  On July 22, 2011, the Court suspended further briefing on the motions and cross-motions for summary judgment, and on August 24, 2011, the Court heard oral argument on the parties' motions and cross-motions for summary judgment.

For most of the 331 claims, Plaintiffs contend that the Railroad held an easement in the railroad corridor while Defendant contends the Railroad held fee title.  For the reasons set forth below, the Court finds that the Railroad held fee title to those segments of the railroad corridor that it acquired through conveyance deeds.  Accordingly, Plaintiffs' motion for summary judgment on the claims related to those deeds is DENIED, and Defendant's motion for summary judgment on those claims is GRANTED.

The Court finds that the Railroad held easements in the segments of the railroad corridor that it acquired by adverse possession and through eminent domain.  The Court also finds that the Railroad exceeded the scope of, and abandoned, its easements and that the July 26, 2004 Notice of Interim Trail Use prevented fee title from reverting to the subservient landowners upon abandonment.  These subservient landowners suffered a Fifth Amendment taking for which they are entitled to just compensation.  Accordingly, Plaintiffs' motion for summary judgment on the claims related to parcels acquired by adverse possession or through eminent domain is GRANTED, and Defendant's motion for summary judgment on those claims is DENIED.

## BACKGROUND

A. The Applicable Statutes

By virtue of the Transportation Act of 1920, ch. 91, § 402, 41 Stat. 456, 477-78, a railroad may no longer abandon or discontinue use of its rail line without federal authorization.  See Nat'l Ass'n of Reversionary Prop. Owners (NARPO) v. Surface Transp. Bd., 158 F.3d 135, 137 (D.C. Cir. 1998).  A railroad may obtain authorization by filing with the Surface Transportation Board ("STB") a standard abandonment

---

[1] This case involves the Mississippi Tennessee Railroad ("MTR"), which most recently provided service over the subject railroad corridor, as well as several of MTR's predecessors-in-interest.  For purposes of this opinion, the Court refers to "the Railroad" generally and specifies where necessary for clarification.

application under 49 U.S.C. § 10903 or by seeking an exemption under 49 U.S.C. § 10502. See Caldwell v. United States, 391 F.3d 1226, 1228 (Fed. Cir. 2004).

Until 1983, upon approval of an application or grant of an exemption, federal jurisdiction typically ended, and state law controlled the disposition of the railroad corridor. NARPO, 158 F.3d at 137. Congress altered this state of affairs when it passed the National Trails System Act Amendments (the "Trails Act") in 1983. 16 U.S.C. § 1241 (2006). Under the Trails Act, a railroad seeking to terminate its rail service may offer to negotiate an agreement whereby its corridor can be used as a public recreational trail subject to possible restoration of rail service at a later date ("railbanking"). § 1247(d).

In this way, operation of the Trails Act preempts otherwise applicable state law, and this Court and others have held that it may result in a Fifth Amendment taking requiring just compensation. See Preseault v. I.C.C. ("Preseault I"), 494 U.S. 1, 24 (1990) (O'Connor, J., concurring); Anna F. Nordhus Family Trust v. United States, 98 Fed. Cl. 331 (2011). Whether a taking results depends upon the railroad's state-created property interest. See Preseault I, 494 U.S. at 24. If the railroad acquired fee title to the corridor, then plaintiffs would have no property interest on which to base a Fifth Amendment claim. See Preseault v. United States ("Preseault II"), 100 F.3d 1525, 1533 (Fed. Cir. 1996). By contrast, if the railroad acquired an easement, and the scope of the easement did not encompass railbanking or recreational trail use, then plaintiffs would have a "viable" claim. Id.

Here, the parties dispute whether the Railroad acquired an easement or a fee simple interest in the subject railroad corridor. Thus, the determinative issues in this case are two: (1) did the Railroad acquire an easement or fee simple interest in the subject railroad corridor; and (2) if the Railroad acquired an easement, was the scope of the easement sufficiently broad to encompass railbanking and recreational trail use? See id.

B.  Statement of Relevant Facts[2]

The railroad corridor at issue is 43.2 miles long and runs through Chickasaw, Pontotoc, and Union Counties in northern Mississippi. It extends from milepost 324.2 near New Albany, Mississippi to milepost 281.0 near Houston, Mississippi. Most recently, Mississippi Tennessee Holdings, LLC ("MTH") owned the corridor, and the Mississippi Tennessee Railroad, LLC ("MTR") offered railroad service over the corridor. According to a valuation schedule filed with the Interstate Commerce Commission ("ICC"), predecessors-in-interest to MTH and MTR began acquiring the railroad corridor

---

[2] The facts in this opinion do not constitute findings of fact by the Court. The facts are taken from the parties' filings of proposed findings of uncontroverted fact and supporting exhibits furnished with their respective briefs. The Court is satisfied that the material facts necessary to render partial summary judgment, as set forth in this opinion, are not in dispute.

in the 1880s through a variety of means, including by deeds and judgments, and pursuant to section 3094 of the 1906 Code of Mississippi.

In April 2004, MTH and MTR jointly petitioned the STB to abandon, and discontinue service over, the corridor. In response, on July 26, 2004, the STB issued a Notice of Interim Trail Use ("NITU"), pursuant to the Trails Act, 16 U.S.C. § 1247(d), authorizing the Railroad to negotiate an agreement to allow the corridor to be used as a public recreational trail subject to possible restoration of rail service. The STB issued additional NITUs for the railroad corridor on July 6, 2006 and June 16, 2008. The June 16, 2008 NITU, which vacated the July 6, 2006 NITU, stated that MTH had reached an agreement with GM&O Rails-to-Trails Recreational District of North Mississippi ("GM&O"), transferring the corridor to GM&O for use as a public recreational trail subject to future railroad use. On July 21, 2008, counsel for MTH informed the STB that on July 18, 2008, MTH had conveyed the subject railroad corridor to GM&O "for railbanking and interim recreational trail use" and had "conveyed its right to reinstate rail service over that right-of-way to the Mississippi Transportation Commission."

Plaintiffs are 257 class members who claim that as of July 26, 2004, they owned 331 parcels of land abutting the subject railroad corridor and that the Railroad held an easement in the corridor for limited railroad purposes. They contend that when MTH and MTR sought to abandon, and discontinue service over, the corridor, the Railroad's easement should have ended, and the land should have reverted to them in fee simple. If not for the issuance of the July 26, 2004 NITU, Plaintiffs say they would have had exclusive rights to the land, free of any easement for recreational trail use or future rail service. Plaintiffs seek just compensation from the United States for preventing the abandonment of the easements on their land, thereby effecting a taking of their property.

For its part, Defendant contends that the Railroad held fee title to most segments of the railroad corridor and thus, Plaintiffs possess no property interests on which to base their Fifth Amendment claims. Moreover, Defendant contends that even where the Railroad held easements, interim trail use pending future rail service does not exceed the scope of the easements.

Pending before the Court are the parties' cross-motions for summary judgment on liability. The Court has jurisdiction under the Tucker Act. 28 U.S.C. § 1491(a)(1) (2006). The Court recognizes that Defendant reserves objections on a number of claims as to (1) ownership of a relevant parcel as of July 26, 2004,[3] and (2) adjacency of a

---

[3] Ownership objections remain unresolved for the following claims: 4A, 4B, 4D, 40, 54A-D, 69, 70, 76, 80, 97A, 97B, 99, 101B, 101C, 101E, 101G, 119, 123, 130, 131, 155A, 155B, 159, 165, 166A-D, 167, 171B, 178, 184, 196, 204A, 224B-C, 227A, 227B, 241, 246, 248, 249A, and 252.

relevant parcel to the railroad corridor.[4]  This opinion does not purport to resolve the factual disputes pertaining to those claims and addresses only those issues of liability determined herein.

For the reasons set forth below, the Court finds that the Railroad held fee title to the segments of the railroad corridor that it acquired by deed conveyance.  Specifically, the Court finds that the Railroad held fee title to the segments of the railroad corridor pertaining to:  (a) all claims in Categories I.A, I.B, and I.C; (b) all claims in Category II (except claims 197, 198, and 199); (c) the portion of claim 233 for which the Fleming deed is the relevant conveyance instrument; (d) all claims in Category III.B; (e) the portion of claim 31 for which the Cooper deed is the relevant conveyance instrument; (f) claim 170; (g) claims 4C-F, 13A-B, and 14A-C; (h) claims 38, 39, and 40; and (i) the portion of claim 133 for which the Cruse deed is the relevant conveyance instrument.  In addition, the Court finds that claims 256 and 257 are not properly a part of this action because they fall outside the purview of the July 26, 2004 NITU.  Accordingly, Plaintiffs' motion for summary judgment on the above-referenced claims is DENIED, and Defendant's motion for summary judgment on the above-referenced claims is GRANTED.

Further, the Court finds that the Railroad acquired easements in the segments of the railroad corridor that it obtained by adverse possession or through eminent domain. Specifically, the Court finds that the Railroad held easements in the segments of the corridor pertaining to:  (a) claims 197, 198, and 199; (b) the portion of claim 233 for which the "E.D. Proclamation" is the relevant conveyance instrument; and (c) claims 234, 235B, 236, 237, 238A, 238B, 239, 240, 254, and 255.  The Railroad exceeded the scope of, and abandoned, its easements, and the issuance of the July 26, 2004 NITU blocked reversion of fee title to the abutting landowners upon abandonment.  As a result, those landowners suffered a Fifth Amendment taking and are entitled to just compensation.  Accordingly, Plaintiffs' motion for summary judgment on the above-referenced claims is GRANTED, and Defendant's motion for summary judgment on the above-referenced claims is DENIED.

For the remaining claims, the Court finds that material fact disagreements exist, making it inappropriate to resolve the claims through summary judgment at this time.

---

[4] Adjacency objections remain unresolved for the following claims: 13A-B, 17, 25, 29, 54C-D, 57, 59, 62, 68A, 69, 70, 88, 89A, 103, 107A, 108B, 109B, 112, 113A-B, 127, 128, 130, 138, 146, 147A-B, 148, 156B, 159, 161, 166A-D, 167, 171B, 172, 178, 184B, 184D, 201A-C, 204A, 206, 215, 221A-B, 224B-C 230B, 231C, 241, 242, 243, 244A-B, 245A, 246, 247A-B, 248, 249, 251, and 252.

DISCUSSION

A. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment will not be granted if the "evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

In reviewing a motion for summary judgment, the Court views the factual record and the inferences to be drawn from the record in the light most favorable to the non-moving party. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When cross-motions for summary judgment are presented, the Court evaluates each motion on its own merits and draws reasonable inferences against the party whose motion is under consideration. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987). The Court will deny both motions if a genuine issue of material fact exists. Id.

B. Plaintiffs' Property Interests

As noted above, the first determinative issue in this case is whether the Railroad acquired an easement or fee simple interest in the subject railroad corridor. The parties have stipulated that on the date of the alleged taking, July 26, 2004, the Railroad held an easement in the segment of the corridor abutting the following fourteen parcels:  197; 198; 199; 234; 235B; 236; 237; 238A; 238B; 239; 240; 250; 254; and 255. See (Def.'s Mem. 13, May 23, 2011; Def.'s Mem. 24-26, July 21, 2011). The parties have also stipulated that for claim 233, the Railroad held an easement in the portion of the corridor it acquired through eminent domain. See (Def.'s Mem. 26, July 21, 2011). The Court addresses these claims as part of Category III.A. See discussion infra Part B(3)(a). For the remaining claims, the parties disagree as to whether the Railroad held fee simple interests or easements in the railroad corridor.

To determine the Railroad's property interests, the Court must look to Mississippi law. See Foster v. United States, 221 Ct. Cl. 412, 607 F.2d 943, 948 (1979) (internal citation omitted). The Supreme Court of Mississippi has consistently held that "[w]here the instrument specifically conveys a right of way, then the deed will be construed as intending to convey only an easement." Crum v. Butler, 601 So. 2d 834, 837 (Miss. 1992) (citing New Orleans and Northeastern R.R. v. Morrison, 35 So. 2d 68 (Miss. 1948); Williams v. Patterson, 21 So. 2d 477 (Miss. 1945)). By contrast, "[i]nstruments that specifically refer to a strip, parcel, or tract of land have been held to convey a fee."

6

Id. (citing Ala. and Vicksburg R.R. v. Mashburn, 109 So. 2d 533 (Miss. 1959); Miss. Cent. R.R. v. Ratcliff, 59 So. 2d 311 (Miss. 1952)).

Where a deed is ambiguous, the Supreme Court of Mississippi has adopted several rules of construction.  The Court has recognized that since at least 1836, Mississippi has applied a statutory presumption that fee title passes where a conveyance is ambiguous. Fibre Corp. v. GSO Am., Inc., 2005 U.S. Dist. LEXIS 37906 (S.D. Miss. Dec. 8, 2005) (citing Mashburn, 109 So. 2d at 535); see also Dossett v. New Orleans Great Northern R.R., 295 So. 2d 771, 775 (Miss. 1974); Ratcliff, 59 So. 2d at 314-15.  This presumption is currently codified in section 89-1-5 of the Mississippi Code (2011) and provides:

> Every estate in lands granted, conveyed, or devised, although the words deemed necessary by the common law to transfer an estate of inheritance be not added, shall be deemed a fee simple if a less estate be not limited to express words, or unless it clearly appear from the conveyance or will that a less estate was intended to be passed thereby.

In addition to presuming fee title when the terms of a deed are ambiguous, the Supreme Court of Mississippi has construed the terms against the drafting party, see Crum, 601 So. 2d at 839, and has favored the grantee over the grantor, see Dossett, 295 So. 2d at 772; Crum, 601 So. 2d at 838.  With these principles in mind, the Court turns to the conveyance instruments at issue.

Plaintiffs divide the 331 claims into categories and sub-categories.  Generally, "Category I" consists of the claims related to parcels on the northern portion of the railroad corridor built in 1887 (class members 1 through 151 and parcels 1 through 188). "Category II" consists of claims related to parcels on the southern portion of the railroad corridor built in 1903 (class members 152 through 257 and parcels 189 through 331). The parties briefed separately 25 claims that would have fallen within Categories I or II and have labeled those 25 claims "Category III."

### 1.  Category I Claims

The parties have stipulated that the Flournay deed[5] is the relevant conveyance instrument for twenty claims, which Plaintiffs have labeled "Category I.A."[6]  The parties have stipulated that the Martin deed[7] is representative of 29 deeds encompassing 99

---

[5] The Flournay deed is recorded in the Union County Recorder of Deeds, Book 6, Page 101.

[6] Category I.A includes the following twenty claims: 1, 2, 3, 4A, 4B, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, 17, 54C, 54D, 55, and 56.

[7] The Martin deed is recorded in the Union County Recorder of Deeds, Book 5, Page 375.

claims, which Plaintiffs have labeled "Category I.B."[8]  Plaintiffs concede that the key provisions of the Flournay and Martin deeds are similar and that the legal analysis under Mississippi case law is "basically the same."  (Pls.' Mem. 28, April 8, 2011.)  The Court agrees that the Flournay and Martin deeds are the same in all material respects and therefore considers them together.

Plaintiffs contend that the Flournay and Martin deeds conveyed easements to the Gulf & Ship Island Railroad, as evidenced by language in the Railroad's charter, as well as by the language of the deeds themselves.  The Court will begin by addressing Plaintiffs' contention based upon the Railroad's charter and then will address Plaintiffs' contention based upon the language of the deeds.

### a.   The Gulf & Ship Charter

The Gulf & Ship Island Railroad is the grantee in both the Flournay and Martin deeds.  On February 23, 1882, the Mississippi Legislature passed an Act incorporating the Railroad and empowering it to construct a rail line (the "Gulf & Ship Charter").  See 1882 Miss. Laws 849.  Plaintiffs' position is that the Gulf & Ship Charter authorized the Railroad to acquire only a "right of way" for limited railroad purposes and thus, that every deed issued to the Railroad pursuant to the Charter conveyed an easement for limited railroad purposes.  (Pls.' Mem. 5-10, June 20, 2011.)

In support of their position, Plaintiffs emphasize language in sections eight and nine of the Charter, authorizing the Railroad to contract for a "right of way through . . . land" and "to the use of said land for their railroad."  (Pls.' Mem. 8, June 20, 2011.)  Sections eight and nine are inapposite as they pertain to situations in which the Railroad acquires land through condemnation or that of a deceased person, minor, or person *non compos mentis*.  See 1882 Miss. Laws 854-56.  By contrast, where the Railroad contracts for land, section one of the Charter grants the Railroad the authority to "purchase, receive, hold and convey real and personal estate . . . in the transaction of their business."  Id. at 849-50.  Black's Law Dictionary equates "real estate" with "real property" and notes that, since the 18th Century, "[r]eal property can be either corporeal (soil and buildings) or incorporeal (easements)."  (9th ed. 2009).  Accordingly, under section one of the Charter, the Railroad had the authority to contract for an easement or fee title.

---

[8] Category I.B includes the following 99 claims: 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 36, 37, 41, 42, 43, 44A, 44B, 45, 46, 47, 48, 49, 50, 51, 52, 53, 58, 60, 61, 63, 64, 68B, 68C, 71, 72, 73, 74, 75, 77, 78, 79, 81, 82, 83, 84, 85, 86, 87, 89B, 90, 91, 92A, 92B, 93, 94A, 94B, 95, 96, 98, 100, 101A, 101D, 101F, 102A, 102B, 102C, 104, 105, 106, 107B, 108A, 109A, 110, 111A, 111B, 114, 115, 116, 117A, 117B, 117C, 118A, 118B, 120, 121, 122, 124, 125, 126, 129, 132, 133, 142, 143, 144A, 144B, 145, 149, 150, and 151.

Plaintiffs make a related argument, based upon the Federal Circuit's decision in Preseault II, 100 F.3d 1525, that the Railroad could acquire only easements in the railroad corridor because the Gulf & Ship Charter authorized it to condemn land for its rail line. (Pls.' Mem. 10-15, June 20, 2011.)  In Preseault II, the Federal Circuit held that while the deed at issue purported to convey fee title, it should be construed as conveying an easement because it was given after the railroad indicated that it was condemning the land by virtue of its conducting a survey and locating its right of way.  Id. at 1536-37. Importantly, the Federal Circuit reached its conclusion *on the basis of Vermont law*, namely two Vermont cases holding that where railroads had the power to take land compulsorily, they could obtain only easements.  See id. (citing Hill v. Western Vt. R.R., 38 Vt. 68 (1859); Troy & Boston R.R. v. Potter, 42 Vt. 265 (1869)).

There is no similar rule in Mississippi.  To the contrary, decisions of the Supreme Court of Mississippi illustrate that in Mississippi, railroads may possess simultaneously the authority to condemn private property and to acquire fee title.  For example, in Mashburn, the Supreme Court of Mississippi held that the deed at issue conveyed fee title despite noting that the deed referred to a survey on the property.  109 So. 2d at 534, 536-37.  In addition, in Williams, the Supreme Court of Mississippi discussed a Mississippi railroad charter that authorized the railroad to obtain fee title by means of condemnation. 21 So. 2d at 479.  In light of these cases, there is no merit to Plaintiffs' contention that the Railroad could not acquire fee title to the corridor because it possessed the power of condemnation.

b.  Categories I.A and I.B: The Flournay and Martin Deeds

Having determined that the Gulf & Ship Charter did not preclude the Railroad from acquiring fee title to the railroad corridor, the Court turns to the language of the conveyance instruments in Category I.  The Flournay deed provides in pertinent part:

> For and in consideration of Seventy Five dollars paid out this day by the Gulf and Ship Island Railroad Company, I hereby sell, and warrant to it *a strip of land* one hundred feet wide *across* the following tract of land in Union County, Mississippi: Section Eighteen and Nineteen, Township Seven, Range Three East.  The *strip of land* to be so laid off as to fifty feet each way from the center of the track of the Railroad *the same being for the Right of Way for said Railroad* Company.  Signed, I convey my right and title to above described *land* to them *for the right of way* said RR Co.

(Pls.' Proposed Findings of Uncontroverted Fact ("PFUF"), Attach. 14, Apps. Ex. I.A, April 8, 2011) (emphasis added).  Like the Flournay deed, the Martin deed conveys and warrants "the land," described as "a strip of land," and to be used for railroad purposes,

namely "for the right of way switches, tracks, depot grounds and other railroad purposes." (Pls.' PFUF, Attach. 14, Apps. Ex. 1.B.)

Based upon the Court's examination of Mississippi law, the Court finds that the Flournay and Martin deeds conveyed fee title to the Railroad. Where, as here, a deed conveys "land" rather than a "right," the Supreme Court of Mississippi has consistently held that the deed conveys fee title. See Dossett, 295 So. 2d at 775; Mashburn, 109 So. 2d at 536; Jones v. New Orleans & Northeastern R.R., 59 So. 2d 541, 543 (Miss. 1952); Ratcliff, 59 So. 2d at 314. Moreover, where a deed conveys "land," additional language in the deed referring to a "right of way" will not serve to limit the granting of fee title. Jones, 59 So. 2d at 541; Ratcliff, 59 So. 2d at 315 ("'In instances . . . involving the construction of deeds granting 'land' rather than a 'right', the result has been reached that the fact that the deed contained additional language embodying some reference to a 'right of way' did not operate to limit the estate conveyed or to cut it down from a title in fee to an easement." (quoting 44 Am. Jur. at 317)).

In support of their view that the Flournay and Martin deeds conveyed easements to the Railroad, Plaintiffs make four primary arguments: (1) that phrases such as, "for the railroad's right of way" indicate that the deeds conveyed easements for limited railroad purposes; (2) that the deeds conveyed floating easements because they did not identify a strip of land with certainty; (3) that because an easement could satisfy the purpose of the grant, fee title should not be granted; and (4) that if the Court finds the deeds ambiguous, then they should be construed against the Railroad. The Court will address each of these arguments below.

### i.  Easements for Railroad Purposes

First, Plaintiffs emphasize the deeds' purpose language and claim that the conveyances were "clearly easements" because they conveyed land "for the railroad's right-of-way." (Pls.' Mem. 29, April 8, 2011.) In support of their interpretation, Plaintiffs note that if the deeds conveyed fee title, then the purpose language in the deeds would be superfluous. Id. Whatever may be the merit of Plaintiffs' interpretation of the deeds, it is not supported by Mississippi law.

In Jones, 59 So. 2d 541, the Supreme Court of Mississippi interpreted three deeds, two of which were very similar to the Flournay and Martin deeds. The first of the two deeds provided that "we sell and warrant to said [Railroad] the land . . . to have and to hold for Depot Sidings Switches and other Rail Road purposes." Id. at 543. In finding that the deed conveyed fee title, the Court relied on the deed's conveyance of "land" and said that the phrase, "to have and to hold for . . . Rail Road purposes," "is simply descriptive of the use to which the land will be put, and does not limit or restrict the estate conveyed." Id. (citing Ratcliff, 59 So. 2d at 311). The second of the two deeds conveyed "a further strip of land . . . for depot, siding, switches and other rail road

purposes." Id. The Court found that it also conveyed fee title and explained that the reference to "rail road purposes" was "an expression of the purpose of the execution of the deed, but d[id] not limit the effect of the granting clause." Id. (citing Ratcliff, 59 So. 2d at 311). Nothing in the Flournay and Martin deeds dictates a different conclusion.

## ii. Floating Easements

Second, Plaintiffs contend that the Flournay and Martin deeds conveyed "floating easements" based upon the Supreme Court of Mississippi's decision in New Orleans & Northeastern R.R. v. Morrison. 35 So. 2d 68. In Morrison, the Court found that the deed at issue conveyed an easement and, in particular, a "floating easement" because "[n]o particular strip was identified with that certainty which a conveyance of the fee would require." Id. at 70. Plaintiffs note that the Flournay and Martin deeds "did not and could not identify" a particular strip of land with certainty because the precise location of the railroad was "to be so laid off" at a future date. (Pls.' Mem. 28-29, April 8, 2011.) As a result, Plaintiffs contend that the Flournay and Martin deeds conveyed floating easements under Morrison. See id.

In making their argument, Plaintiffs fail to note significant differences between the deed at issue in Morrison and the Flournay and Martin deeds. Unlike the Flournay and Martin deeds, the deed at issue in Morrison expressly conveyed a "right of way"—not "land." See 35 So. 2d at 69. Accordingly, the Court found no reason to "construe the deed otherwise than according to its purport" and held that it conveyed an easement. Id. at 70-71. The Court was not reviewing a deed, like the Flournay and Martin deeds, that conveyed "land" but did not describe the land with particularity.

The Court did have occasion to review such a deed in Mashburn, 109 So. 2d 533, and it expressly rejected an argument similar to that made by Plaintiffs here. In Mashburn, the deed at issue provided in pertinent part:

> [W]e . . . in consideration of the sum of One Dollar . . . convey unto the President, Directors, and Company of the Commercial and Rail Road Bank of Vicksburg, and their successors forever, all that portion of our tract of land near Clinton on Bakers Creek being parts of Section Nineteen (19) in Township No. Six of Range No. Two West of lands offered for sale at Mount Salus which is or may be necessary or useful to the said Company in the construction, use, and preservation of the Rail Road from Vicksburg to Jackson, the route whereof, according to the located survey of the Engineer, Mr. Van Rensellaer, from Station No. to Station No. runs through my said land.

11

Id. at 534.  Appellees in Mashburn argued that because the description of the property in the deed was "uncertain," the Court should hold the deed invalid.  Id. at 533.  The Court rejected appellees' argument and held that, despite the uncertain description of the property conveyed, the deed granted fee title to the railroad.  Id. at 537.

Similarly, in Dossett, 295 So. 2d at 775, the deed at issue contained an incomplete description of the land and provided that the precise location of the land "was to be selected by survey and location."  Despite the incomplete description of the land, the Court held that the deed conveyed fee title.  Id.  In light of Mashburn and Dossett, there is no merit to Plaintiffs' argument that the Flournay and Martin deeds did not convey fee title because they do not contain a precise description of the land conveyed thereby.

### iii.   Purpose Satisfied by Easements

Third, Plaintiffs assert that the Flournay and Martin deeds should be construed as granting easements because the purpose of the grants—to allow for the Railroad's right of way—could be satisfied by conveying easements.  (Pls.' Mem. 17, June 20, 2011.) Plaintiffs again rely on Morrison, where the Court stated that "where an easement will satisfy the purpose of the grant a fee will not be included in the grant unless expressly provided."  35 So. 2d at 70.  Here, the Flournay and Martin deeds "expressly provided" for fee title, as indicated by their conveyance of "land."  Thus, even under the rule as quoted by Plaintiffs, the Flournay and Martin deeds should be read to convey fee title.

Plaintiffs appear to go even further than the Court in Morrison, however, suggesting that despite the clear wording of the Flournay and Martin deeds, the Court should construe them as conveying easements because easements could satisfy the purpose of the conveyances.  The Court in Morrison did not advocate disregarding the terms of a deed.  To the contrary, the Court found that the deed at issue unambiguously conveyed an easement because "[b]y its language it conveyed a 'right of way'.  It did not convey land."  Id. at 70.  The Court's statement—that where an easement will satisfy the deed's purpose, a fee will not be included unless expressly provided—was made in response to appellant's argument that a fee should be inferred *despite* the express terms of the deed.  The Court responded by saying that it would not imply a fee where the terms of the deed "conveyed rights adequate to the grantee's special purpose."  Id. at 70.  The Court did not say, as Plaintiffs seem to suggest, that where an easement could satisfy the purpose of the grant, the deed should be construed as conveying an easement, despite language to the contrary.

### iv.   Construing An Ambiguous Deed

Fourth, Plaintiffs rely on the Supreme Court of Mississippi's decision in Crum v. Butler, 601 So. 2d 834, to urge that if the Court finds that the terms of the deeds are ambiguous—because the deeds refer to both "land" and a "right of way"—then it should

construe them against the Railroad, (Pls.' Mem. 23, June 20, 2011).   In light of Mississippi case law, the Court does not find that the terms of the Flournay or Martin deeds are ambiguous.  Nevertheless, even if the Court found the terms ambiguous, they should be construed as granting fee title to the Railroad under Mississippi law.

Plaintiffs are correct that in <u>Crum</u>, the Court found the terms of the deeds unclear and construed them against the drafter, i.e., the subject railroad.  <u>See</u> 601 So. 2d at 839.  The Court did so, however, because it made a finding that the railroad had drafted the deeds.  <u>Id.</u>  Here, Plaintiffs provide no concrete evidence to support their supposition that the Railroad must have drafted the deeds at issue.  <u>See</u> (Pls.' Mem. 32, April 8, 2011).  Under these circumstances, two other Mississippi rules of construction dictate that the deeds be construed as conveying fee title to the Railroad.  As noted above, where the terms of a deed are ambiguous, Mississippi courts construe the terms against the grantor.  <u>See</u> <u>Dossett</u>, 295 So. 2d at 772; <u>Crum</u>, 601 So. 2d at 838.  In addition, section 89-1-5 of the Mississippi Code provides that fee title will be presumed unless it is clear from the conveyance that a lesser estate was intended to be passed thereby.  Thus, even if the Court were to find that the terms of the Flournay and Martin deeds are ambiguous—which it does not—Mississippi rules of construction would favor a finding that the deeds conveyed fee title to the Railroad.

For the reasons set forth above, the Court finds that the Flournay and Martin deeds conveyed fee title to the Railroad.

### c.   Category I.C: The Cooper Deed

The parties have stipulated that the Cooper deed[9] pertains to claims 30, 32, and 33, <u>see</u> (Def.'s Resp. to Pls.' Proposed Additional Facts 21-22, July 21, 2011), which Plaintiffs have labeled Category I.C.  The Cooper deed provides in pertinent part:

TRUSTEES DEED

> THIS DEED, made . . . between Charles E. Cooper, Trustee of Lebanon . . . party of the first part, and Gulf and Chicago Railroad Company of Mississippi, party of the second part, Witnesseth, that, The said party of the first part for and in consideration of the sum of fifty dollars ($50.00) paid by said party of the second part . . . does by these presents remise, release, and quit-claim unto the said party of the second part and its successors and assigns forever, all the right, title, interest, claim and demand of the said party of the first part in and to the following described tract, peace, and parcel of land situate, lying,

---

[9] The Cooper deed is recorded in the Union County Recorder of Deeds, Book 16, Page 50.

and being in the County of Union and state of Mississippi, Viz:-
The right of way one hundred (100) feet wide.

Charles E. Cooper, Trustee.

Plaintiffs emphasize the phrase "right of way" and contend that the Cooper deed is a clear grant of an easement, see (Pls.' Mem. 24-25, June 20, 2011), while Defendant emphasizes the phrase "tract, p[i]ece, and parcel of land" and contends that the deed conveyed fee title, see (Def.'s Mem. 16, July 21, 2011). Defendant takes the view that it would be odd for the deed to convey "all the right, title, [and] interest" Mr. Cooper held in the property if he were conveying only a "right" to use the land. (Def.'s Mem. 16, July 21, 2011.) Moreover, Defendant asserts that Plaintiffs have provided no evidence that Mr. Cooper did not hold fee title and that the deed suggests he did because the right of way conveyed was part of a larger tract of land that Mr. Cooper held. Id.

The Court finds both constructions equally plausible and the deed ambiguous. As Plaintiffs note, the deed appears to quit-claim to the Railroad "[t]he right of way," indicating that the deed conveys an easement. However, by conveying all right and title in the described land, the deed appears to convey whatever interest Mr. Cooper held as trustee, and there is no evidence to suggest that Mr. Cooper did not hold fee title to the land. The Ripley Railroad Charter, which pertains to the Gulf and Chicago Railroad Company,[10] authorizes the Railroad to contract with a trustee for "the land *or* right of way." 1871 Miss. Laws 273 (providing that the Railroad can contract for the land or right of way with the landowners, and a trustee can pass title to the land in the same manner as a landowner) (emphasis added). Accordingly, the Charter is unhelpful for determining whether the Cooper deed conveyed fee title or an easement. In addition, the parties have presented no evidence as to which party drafted the deed.

In such circumstances, the Court is left with two rules of construction under Mississippi law, both of which favor the Defendant. As noted above, where the terms of a deed are ambiguous, Mississippi favors a finding of fee simple, Miss. Code Ann. § 89-1-5, and construes the terms against the grantor, Dossett, 295 So. 2d at 772; Crum, 601 So. 2d at 838. Accordingly, the Court finds that the deed should be construed, according to Mississippi law, as conveying fee title to the Railroad.

### d.  Category I.D: Section 3094 of the 1906 Code of Mississippi

The parties have stipulated that section 3094 of the 1906 Code of Mississippi is the relevant conveyance instrument for nine claims, which Plaintiffs have labeled

---

[10] Plaintiffs represent that the Gulf and Chicago Railroad Company is the legal successor to the Ripley Railroad. See (Pls.' Mem. 30, June 20, 2011).

Category I.D.[11]   See (Def.'s Resp. to Pls.' Proposed Additional Facts, July 21, 2011).
Section 3094, now codified at section 15-1-13 of the Mississippi Code, provides:

> (1) Ten (10) years' actual adverse possession by any person
> claiming to be the owner for that time of any land,
> uninterruptedly continued for ten (10) years by occupancy,
> descent, conveyance, or otherwise, in whatever way such
> occupancy may have commenced or continued, shall vest in
> every actual occupant or possessor of such land a full and
> complete title, saving to persons under the disability of minority
> or unsoundness of mind the right to sue within ten (10) years
> after the removal of such disability, as provided in Section 15-1-
> 7. However, the saving in favor of persons under disability of
> unsoundness of mind shall never extend longer than thirty-one
> (31) years.

Miss. Code Ann. (2011).  Defendant has presented a valuation schedule filed with the
ICC, wherein one of MTH's predecessors-in-interest, the Gulf, Mobile & Northern
Railroad Company (the "GM&N Railroad"), referenced section 3094 to indicate that it
had obtained title to the land by adverse possession.  See (Def.'s PFUF, Ex. E).  In
Defendant's view, this demonstrates that the Railroad was "claiming to be the owner" of
the "land," as required by section 3094.  Defendant also presents an STB decision, dated
November 2, 2004, explaining that MTH had obtained a policy to insure fee simple title
to the railroad corridor.  See (Def.'s PFUF, Ex. G at 4).  Defendant contends that this
document further demonstrates that MTH was claiming to own the land.  See (Def.'s
Mem. 25, May 23, 2011).

The Court is satisfied that MTH and its predecessor-in-interest were claiming to
own the land as required by section 3094.  The question remains, however, whether a
railroad is permitted, under Mississippi law, to acquire fee title to a right of way by
adverse possession.

Section 3094 provides that actual adverse possession for ten years shall vest in the
occupant "full and complete title"; however, it is not clear whether this means full and
complete title to a fee or an easement.  State laws differ dramatically as to whether
adverse possession by a railroad results in the railroad obtaining fee ownership or merely
a prescriptive easement.  10-78A Powell on Real Property § 78A.06 (2011).  "Some
states allow acquisition of fee ownership by prescription, others have limited prescriptive
rights to whatever could be obtained by eminent domain . . . , and others have simply
limited the railroad to an easement on the grounds that it did not need anything greater."

---

[11] Category I.D includes the following nine claims: 34, 35, 65, 66, 67A, 67B, 141, 154B, and 154C.

Id. at § 78A.06(2)(d).  Unfortunately, Mississippi state courts have not ruled directly on this issue.

Plaintiffs contend that Ryan v. Mississippi Valley & Ship Island R.R., 62 Miss. 162 (1884), supports their view that land obtained through adverse possession results in an easement only.  (Pls.' Mem. 29, June 20, 2011.)  In Ryan, the Supreme Court of Mississippi held that a railroad may acquire a right of way by adverse possession and that the scope of the right of way is limited to the railroad's actual occupancy.  62 Miss. at 166.  The Court did not, however, address whether a railroad may acquire fee title to a right of way, and no other Mississippi state court has addressed the question directly.

The United States District Court for the Northern District of Mississippi did address the question in Tennessee Gas Pipeline Co. v. Mississippi Central R.R., 164 F. Supp. 2d 823 (N.D. Miss. 2001).  In Tennessee Gas, the court rejected the railroad's argument that it had acquired fee title to the land by virtue of adverse possession.  Id. at 826-27.  In holding that the railroad acquired an easement only, the court relied on two points.  First, it noted that "the elements required to establish a claim for adverse possession of land and the elements . . . required to establish a prescriptive easement are identical."  Id. at 826 (citing Thornhill v. Caroline Hunt Trust Estate, 594 So. 2d 1150, 1152-53 (Miss. 1992)).  From this, the court deduced that fulfilling the requirements of adverse possession results in an easement only.  Second, the Court relied on the Supreme Court of Mississippi's decision in Morrison, which it characterized as holding that "where an easement will satisfy a railroad's purposes, a prescriptive easement – and not fee ownership – will be the interest deemed to be possessed by the railroad."  Id.

The Court is not persuaded by the reasoning of Tennessee Gas and notes that the district court's interpretation of Mississippi law is not binding on this Court.  See Ji v. Bose Corp., 626 F.3d 116, 122 n.4 (1st Cir. 2010).  First, the Court draws no inference one way or the other from the fact that the elements of adverse possession are the same as those for a prescriptive easement.  Mississippi courts have long held that an individual may obtain fee title to land by fulfilling the requirements of adverse possession set forth in section 3094.  See, e.g., Evans v. Harrison, 93 So. 737 (Miss. 1922) (holding that defendant acquired fee title to land by satisfying the requirements of adverse possession, even though the land actually fell within the plaintiff's deed).  Thus, in Mississippi, fulfilling the requirements of adverse possession may result in fee title or a prescriptive easement.  Second, the Court disagrees with the district court's characterization of Morrison.  As noted above, the Court in Morrison merely stated that it would not imply a fee where the conveyance set forth in the deed—an easement—would satisfy the purpose of the grant.  35 So. 2d at 70.  The Court did not, as Tennessee Gas contends, set forth a rule that an easement will be presumed if it will satisfy the purpose of the grant.

With no clear Mississippi rule to apply, the Court seeks guidance in the applicable railroad charter.  Simply because a charter authorizes a railroad to acquire fee title

through eminent domain does not lead to the inescapable conclusion that the railroad can acquire fee title through adverse possession.  However, if a charter prohibits a railroad from acquiring fee title through eminent domain (in which case the railroad would be required to pay the landowner just compensation), it would be unreasonable to assume that the railroad could acquire fee title through adverse possession (where the railroad would not be required to pay the landowner just compensation).  Thus, if the applicable railroad charter prohibits the Railroad from acquiring fee title in the case of eminent domain, it is reasonable to assume that the Railroad would be prohibited from acquiring fee title in the case of adverse possession.

The question is:  what is the applicable railroad charter?  Here, the valuation schedule filed with the ICC reports that the GM&N Railroad claimed to own the Category I.D parcels by virtue of adverse possession.  The GM&N is the legal successor to the New Orleans, Mobile & Chicago and the Ripley Railroads, and, as such, would seem to possess the rights and powers under the Ripley Charter.[12]  It is not clear from the valuation schedule, however, whether the GM&N was claiming that it had adversely possessed the parcels for the statutory period, or whether it acquired the parcels from another railroad, which had adversely possessed the parcels.  Accordingly, the Court finds that issues of material fact make it inappropriate to resolve the Category I.D claims through summary judgment at this time.

### 2. Category II Claims

"Category II" consists of claims related to parcels on the southern portion of the railroad corridor (class members 152 through 257 and parcels 189 through 331) built in approximately 1903.  All of the deeds in Category II convey interests to the Gulf and Chicago Railway Company or, in one case, to the New Orleans Mobile & Chicago Railway Company.  Both companies are legal successors to the Ripley Railroad Company.  See Gulf, Mobile and Northern R.R., 125 I.C.C. 765 (No. 866, 1927). Accordingly, the Ripley Charter applies to this category of claims.

Plaintiffs contend that the deeds in Category II conveyed easements to the Railroad, as evidenced by the language in the Ripley Charter, as well as by the language in the deeds themselves.  The Court will begin by addressing Plaintiffs' contention based upon the Ripley Charter and then will address Plaintiffs' contention relating to the language of the conveyance deeds.

---

[12] A valuation decision issued by the ICC in 1927 makes clear that the Gulf, Mobile and Northern Railroad Company (of Mississippi) was the eventual legal successor of the Ripley Railroad.  See 125 I.C.C. at 780.  According to that same decision, the GM&N was incorporated under the general laws of Mississippi on December 8, 1915, id.; however, neither the parties nor the Court have been able to locate the charter incorporating the GM&N Railroad.

a.  The Ripley Charter

The language of the Ripley Charter clearly authorizes the Ripley Railroad to contract for fee title to land.  Section three of the Charter authorizes the Railroad "to own and possess *any* real and personal estate that may be granted, devised or given to it . . . and to obtain by purchase, and to own and possess *any* real and personal estate that may be necessary and convenient for the construction, maintenance and management of said railroad."  1871 Miss. Laws 270 (emphasis added).  Where the Railroad condemns land, however, the Charter limits the Railroad to obtaining an easement.  Section seven of the Ripley Charter provides:

> That if the said company cannot agree with the *owner of the land through which they desire said road to pass*, . . . a jury of twelve disinterested freeholders of the county . . . shall . . . justly and fairly value the damage which the *owner or owners* will sustain by the *use or occupation of the land*, materials or property required by said company; and the jury estimating damages, if the ground occupied by the road, shall take into estimate the benefit resulting to the *owner or owners*.

1871 Miss. Laws 274 (emphasis added).  This language, as well as other provisions in the Charter, indicates that when the Ripley Railroad condemned land, the original landowners maintained ownership while the Railroad acquired only an easement to use or occupy the land.

In support of their position that the Category II deeds conveyed easements to the Railroad, Plaintiffs contend—as they did in regard to the Gulf & Ship Charter—that the Railroad could not acquire fee title because the Ripley Charter authorized it to condemn land.  Plaintiffs' position is that, in light of the Railroad's condemnation power, the Category II grantors "had no meaningful choice but to allow a railroad to pass over their land."  (Pls.' Mem. 32, June 20, 2011.)  In such a case, Plaintiffs argue that the Federal Circuit's decision in Preseault II, 100 F.3d 1525, dictates that the Railroad could obtain only easements in the railroad corridor.  See (Pls.' Mem. 37, June 20, 2011).

For the reasons stated previously, see discussion supra Part B(1)(a), the Court disagrees with Plaintiffs' position.  The Court's holding in Preseault II is inapplicable here, as it was based upon a Vermont rule, see 100 F.3d at 1536-37, for which there is no analogue in Mississippi.  Under the Ripley Charter, where the Railroad condemns land, it acquires an easement only; however, in Mississippi, where the Railroad contracts for land, it is not precluded from acquiring fee title simply because it also possesses the power of condemnation.

b. Category II.A1-34: The Griffin Deed

Having determined that the Ripley Charter did not preclude the Railroad from acquiring fee title to the railroad corridor, the Court turns to the language of the conveyance deeds in Category II.  There are 53 Category II source deeds.  The parties have stipulated that of the 53 source deeds, 34 are similar or identical to the Griffin deed.  See (Pls.' Mem. 38, June 20, 2011; Def.'s Mem. 20 n.18, July 21, 2011).[13]  Accordingly, the Griffin deed is the representative deed for 58 claims, which Plaintiffs label Category II.A1-34.[14]  The Griffin deed provides in pertinent part:

> In consideration of One Dollar I convey and warrant to the Gulf and Chicago Railway Company *the land* described as follows, to wit: *The strip of land* and one hundred feet wide being fifty feet on each side of the center line of the railroad of said company as the same as surveyed, and to be located across the following described land situated in Chickasaw County, to wit: NW ¼ of SW ¼ Sec 29. Township 13. Range 3 East. Reference being hereby especially made to the said survey of said railroad for a more accurate description of *the land hereby conveyed*, with the right to cut down any trees which might fall upon said road and the further right to do all necessary things for the adequate and

---

[13] The Griffin deed is recorded in the Chickasaw County Recorder of Deeds, Book 80, Page 165. Defendant contends that the Griffin deed is the representative deed for all of the Category II claims, while Plaintiffs contend that the Griffin deed is representative of 34 source deeds, including the Griffin deed and the following 33 deeds, which are filed in either Chickasaw or Pontotoc County: Harrill (Book 80, Page 545); Shavely, (Book 81, Page 168); Pearson, (Book 100, Page 367); Overton, (Book 1100, Page 227); Holland, (Book 78, Page 36); Carr, (Book 78, Page 138); Thompson, (Book 100, Page 229); Spencer, (Book 91, Page 226); Saxton (Book 80, Page 235); Reeder, (Book 78, Page 144); Bell, (Book 78, Page 35); Rodgers, (Book 78, Page 38); Jones, (Book 78, Page 22); Owen, (Book 78, Page 37); Flaherty, (Book 78, Page 140); Hill, (Book 78, Page 21); Gregory, (Book 78, Page 224); Davis, (Book 78, Page 139); Lower, (Book 78, Page 23); Weeks, (Book 78, Page 147); Patterson, (Book 78, Page 143); Isabell, (Book 78, Page 142); Holladay, (Book 80, Page 155); Harris, (Book 80, Page 202); Brand, (Book 80, Page 156); Fitzpatrick, (Book 80, Page 399); Carter, (Book 80, Page 160); Hill, (Book 80, Page 547); Anderson, (Book 80, Page 452); McDonald, (Book 100, Page 43); Bell, (Book 100, Page 192); Love, (Book 80, Page 154); Carr, (Book 100, Page 317).  For purposes of this opinion, Category II.A includes the 34 deeds for which the parties agree that the Griffin deed is the representative deed.

[14] There is substantial overlap between the claims that Plaintiffs list in Category II.A and the claims that Plaintiffs list in the other sub-categories of Category II.  See (Pls.' Mem., Attach. 1, Ex. G, June 20, 2011).  For example, Plaintiffs list claim 231C in both Category II.A and Category II.C.  For purposes of this opinion, where Plaintiffs list a claim in Categories II.B through II.I, the Court does not include the claim within Category II.A.  As a result, Category II.A includes the following 58 claims: 152, 153, 154A, 155A, 155B, 156A, 156B, 163, 164, 165, 166A, 175, 178, 181, 182, 183A, 183B, 184A, 184B, 184C, 184D, 185, 186, 187, 188, 189, 190, 191, 195, 200, 201C, 203B, 204A, 204B, 205A, 205B, 206, 207, 208, 209, 210, 211, 215, 224A, 224B, 224C, 225, 226, 227A, 227B, 228, 231A, 231B, 232, 241, 251, 252, and 253.

proper drainage of said road.  Given under my hand this 26th day
of December 1903.

Joe. T. Griffin

(emphasis added).

Like the Flournay and Martin deeds, the Griffin deed conveys "land," in particular
a "strip of land 100 feet wide."  As explained above, where a deed conveys "land" rather
than a "right," the Supreme Court of Mississippi has consistently held that the deed
conveys fee title.  See Dossett, 295 So. 2d at 775; Mashburn, 109 So. 2d at 536; Jones, 59
So. 2d at 543; Ratcliff, 59 So. 2d at 314.  It makes no difference, as Plaintiffs claim, that
the Griffin deed refers to "the said survey of said railroad."  Plaintiffs contend that the
reference to the survey already conducted on the land indicates that the "landowners had
no choice but to allow [the] railroad to cross over their land," and where such choice is
lacking, the Railroad is limited to acquiring an easement only.  (Pls.' Mem. 39, June 20,
2011.)  As explained, see discussion supra Part B(1)(a), Mississippi courts have
recognized no such limitation.  Accordingly, a reference to the Railroad's survey does not
defeat a clear conveyance of fee title.

c.  Categories II.B through II.I

The remainder of the Category II deeds are similar to the Griffin deed in that they
all convey "land(s)," in particular a "strip of land one hundred feet wide."[15]  Like the
Griffin deed, the Court finds that the remainder of the Category II deeds conveyed fee
title to the Railroad.  Plaintiffs highlight certain distinctions among the Category II deeds,
arguing that these distinctions favor the interpretation that the deeds conveyed easements
to the Railroad.  The Court is not persuaded but addresses each of these distinctions
below.

First, Plaintiffs note that certain deeds in Category II reserve timber rights in the
grantor while conveying land to the Railroad.  Plaintiffs contend that such a reservation
"would not make sense" if the grantor were conveying land "in fee simple absolute."
(Pls.' Mem. 39, June 20, 2011.)  The Court disagrees and finds that a timber reservation

---

[15] Plaintiffs further sub-categorize the Category II claims into Categories II.B, II.C, II.D1-2, II.E, II.F1-5,
II.G1-7, II.H and II.I.  While the Court recognizes and considers the distinctions among the Category II
deeds, it considers the remainder of the Category II claims—those not falling with Category II.A1-34—
together.  Accordingly, the Court's discussion of the remainder of the Category II deeds pertains to the
following 64 claims, which would fall within Plaintiffs' Categories II.B through II.I:  157, 158, 159, 160,
161, 162, 166B, 166C, 166D, 167, 168A, 168B, 169, 171A, 171B, 172, 173A, 173B, 174, 176, 177,
179A, 179B, 180, 192, 193, 194, 201A, 201B, 202, 203A, 212, 213, 214, 216, 217, 218A, 218B, 219A,
219B, 220, 221, 222A, 222B, 223, 229A, 229B, 230A, 230B, 231C, 235A, 238C, 242, 243, 244A, 244B,
245A, 245B, 246, 247A, 247B, 248, 249A, and 249B.

is not inconsistent with a grant of fee title.  In <u>Finkbine Lumber Co. v. Saucier</u>, 116 So. 736 (Miss. 1928), the Supreme Court of Mississippi upheld a deed that conveyed land but reserved timber rights in the grantor, stating that "timber on land may be owned by one person, and the land by another."  <u>Id.</u> at 738.  The Court noted that "a deed conveys only the property described therein and which it manifests an intention . . . to convey."  <u>Id.</u> at 737.  In Mississippi, "land" includes the timber growing on the land.  <u>See</u> <u>Bernard v. Bd. of Supervisors</u>, 62 So. 2d 576, 581 (Miss. 1953) (citing <u>Harrell v. Miller</u>, 35 Miss. 700 (1858)).  As such, it would not be unusual for a grantor to include such a reservation to maintain his right to timber on the land conveyed.

The Court acknowledges that in <u>Morrison</u>, after the Supreme Court of Mississippi found that the deed at issue clearly conveyed an easement, it supported its finding by noting that "reservations as to timber and cultivation were consistent rather with an easement than title in fee."  35 So. 2d at 70.  Unlike in <u>Morrison</u>, however, the language of the Category II deeds is clear in conveying fee title, as indicated by the conveyance of "land."  Even if a timber reservation were viewed as consistent with the conveyance of an easement, rather than a fee, the presence of such a reservation is insufficient to overcome a clear grant of fee title.  Moreover, if a timber reservation could be said to render the deed ambiguous, the ambiguity would be resolved in favor of fee title.  <u>See</u> Miss. Code Ann. § 89-1-5 (2011).  Accordingly, despite inclusion of a timber reservation, the deeds should be construed as conveying fee title.

Second, Plaintiffs note that certain Category II deeds contain reversion clauses, providing that the deed is null and void if certain conditions are not met.  Plaintiffs question how a reversion clause could exist if the grant were a fee simple, suggesting that the two cannot co-exist.  <u>See</u> (Pls.' Mem. 39-40, June 20, 2011).  Under Mississippi law, they can co-exist, and where they do, they convey a fee simple determinable.  <u>See</u> <u>Shurley v. Aaron</u>, 80 So. 2d 61, 62 (Miss. 1955) (finding that "'[a]n estate in fee simple determinable is created by any limitation which, in an otherwise effective conveyance of land, (a) creates an estate in fee simple, and (b) provides that the estate shall automatically expire upon' . . . the happening or non-happening of a specified occurrence" (quoting Restatement (First) of Prop.: Freehold Estates § 29 (1936))).  The Supreme Court of Mississippi has interpreted a deed that conveyed "a strip of land" and also contained a reversion clause.  In <u>Dossett</u>, the deed at issue stated that "if said railroad be not located and constructed across said lands . . . then this transfer and conveyance shall be null and void."  295 So. 2d at 776.  The Court in <u>Dossett</u> held that the deed conveyed fee title, <u>id.</u> at 775-76, illustrating that a reversion clause need not defeat a grant of fee title.

Third, Plaintiffs point out that certain Category II deeds refer to a "right of way" in the body or the title of the deed.  The Supreme Court of Mississippi interpreted such a deed in <u>Ratcliff</u>.  59 So. 2d 311.  There, the deed at issue conveyed "the following described seven pieces or parcels of land," and after the metes and bounds description of

each parcel, stated: "[t]he above described tract or *right of way* containing [X number of] acres, more or less."  Id. at 311-13 (emphasis added; internal quotation marks omitted). Despite the repeated reference to "right of way"—recited in the deed six times—the Court held that the deed conveyed fee title because the "granting clause . . . in plain and unambiguous language convey[ed] an estate in fee simple."  Id. at 314.  "The mere fact that a deed may be entitled 'right of Way' [sic], or that the term 'right of way' is employed in a recital clause, is not sufficient to convert the absolute fee conveyed by the granting clause into an easement."  Id. at 315 (citing 74 C.J.S. Railroads § 84 ("If the conveyance . . . shows an intention to convey a fee simple title, it will be so construed, although the instrument is entitled 'deed of right of way,' or employs the term 'right of way' in describing the property.")).  As in Ratcliff, the granting clauses of the Category II deeds conveyed fee title, and any reference to a "right of way" in the body or title of the deeds is insufficient to convert the conveyance into an easement.

Fourth, and finally, Plaintiffs note that certain deeds in Category II recite the receipt of one dollar in consideration for the conveyance.  Plaintiffs contend that the recital of nominal consideration indicates that the grantor conveyed an easement to the Railroad.  (Pls.' Mem. 42, June 20, 2011).  The Supreme Court of Mississippi addressed this issue in Mashburn.  109 So. 2d 533.  There, it stated that "great weight should not be attached" to the fact that "the deed recited receipt of a nominal consideration."  Id. at 536. The Court continued:

> The consideration might have been entirely different from that stated. When the case was tried there was no way to introduce proof bearing on that question. Besides, the benefit to the property owner resulting from construction and operation of the Railroad might have been the true consideration for the execution of the deed. Each case must be decided according to the facts of the case.

Id.  Plaintiffs here have offered no evidence of the actual consideration received by the grantors.  Moreover, many of the deeds in Category I, such as the Martin deed, state that the grantors received as consideration "the benefits to accrue to [them] by the building of the [railroad]."  There is no evidence that the Category II grantors did not likewise view the operation of the Railroad on their land as adequate consideration.  Absent evidence of the actual consideration received by the grantors and in light of the Court's statements in Mashburn, the Court cannot attach great weight to the fact that certain deeds in Category II recited the receipt of nominal consideration.

For the reasons set forth above, the Court concludes that the Category II deeds conveyed fee title to the Railroad.

3.  Category III Claims

The parties separately briefed 25 claims that would have fallen within Categories I or II, and Plaintiffs have labeled these claims "Category III."[16]  Plaintiffs further divide Category III into three sub-categories, which they label Category III.A, III.B, and III.C. The Court will address each sub-category below.

a.  Category III.A

Category III.A includes the following fourteen claims: 233, 234, 235B, 236, 237, 238A, 238B, 239, 240, 250, 254, 255, 256, and 257.  (Pls.' Mem. 43-44, June 20, 2011.)

i.  Claims 256 and 257

Defendant contends that Plaintiffs cannot state a valid claim under the Fifth Amendment as to claims 256 and 257 because "the relevant parcels for those claims are not between milepost 324.2 and milepost 281.0 of the railroad, and they therefore are not covered by the relevant NITU."  (Def.'s Mem. 27, July 21, 2011.)  The July 26, 2004 NITU pertains to the section of rail line extending "from milepost 324.2 near New Albany to the end of the line at milepost 281.0 near Houston, MS."  (Pls.' PFUF, Attach. 20, Ex. C, Apr. 8, 2011.)  After comparing the description of the land conveyed in the source deeds for claims 256 and 257, see (Pls.' Supp. PFUF, Attach. 2, Exs. 256-57), with Map 16 from the National Archives and Records Administration ("NARA") (submitted by Plaintiffs in hard copy), the Court finds that the parcels pertaining to claims 256 and 257 lie southwest of milepost 281.0 and are, therefore, not covered by the July 25, 2004 NITU.  Accordingly, Defendant is entitled to summary judgment on claims 256 and 257.

ii.  Remaining Category III.A Claims and Claims 197, 198, and 199

The parties agree that for fourteen claims, and part of a fifteenth, the Railroad held an easement in the relevant segment of the corridor.  They submit that ten of the Category III claims (234, 235B, 236, 237, 238A, 238B, 239, 240, 254, and 255) pertain to segments of the corridor acquired by judgment of condemnation and, as a result, that the Railroad acquired an easement in those parcels under the provisions of the Ripley Charter.  See (Def.'s Mem. 24-25, July 21, 2011).  Likewise, the parties agree that the Railroad held an easement in that portion of claim 233 acquired through eminent domain,

---

[16] Category III includes the following 25 claims: 31, 112, 134, 135, 136, 137, 138, 139, 140, 170, 196, 233, 234, 235B, 236, 237, 238A, 238B, 239, 240, 250, 254, 255, 256, and 257.  (Pls.' Mem. 43 n.21, June 20, 2011.)

pursuant to an "E.D. Court Proclamation." Id. at 26-27.[17]  Similarly, they concede that the Railroad held an easement in the relevant parcel for claim 250, acquired by "tacit permit." Id. at 25.  Finally, the parties agree that the Railroad held an easement in the relevant parcels for three Category II claims (197, 198, and 199) acquired by virtue of condemnation. Id. at 3 n.7.  The Court will consider all of these parcels together.

Even where Defendant concedes that the Railroad held an easement in the railroad corridor, Defendant nevertheless submits that Plaintiffs are not entitled to just compensation under the Fifth Amendment because the scope of the Railroad's easement is sufficiently broad to encompass both railbanking and recreational trail use. (Def.'s Mem. 31, May 23, 2011.)  To determine the scope of the Railroad's easement, the Court must look to the Ripley Charter, as the Railroad acquired the easements pursuant to the authority conveyed therein. See Preseault II, 100 F.3d at 1542 (noting that "'[t]he extent of an easement created by a conveyance is fixed by the conveyance'" (quoting 5 Restatement of Property § 482 (1944))).

Section six of the Ripley Charter gives the Railroad the power to acquire land by eminent domain "so far as may be necessary or useful to the purposes of said railroad." 1871 Miss. Laws 278.  Section two of the Charter sets forth the Railroad's two primary purposes: (1) "[t]o construct and build, and thereafter to own, maintain, manage and use a main 'Trunk Railroad'"; and (2) "to take, transport, carry and convey persons or property upon said railroad." Id. at 269.  The question is "whether an easement acquired for such specifically described purposes may be read broadly enough to include" railbanking and recreational trail use. Preseault II, 100 F.3d at 1541.  Although no Mississippi court has decided this precise question, Mississippi courts have analyzed the scope of railroad easements acquired through eminent domain.

In Weir v. Standard Oil Co., 101 So. 290 (Miss. 1924), the subject railroad acquired the prior landowners' property through eminent domain and thereafter leased part of the property to Standard Oil Company, which erected "oil tanks and other equipment, necessary or useful in storing and handling oil." Id.  To determine whether the leasing of the land was a use within the scope of the original easement, the Court looked to whether it "was a use consistent with the purposes for which the right of way was acquired, or whether it was a use so foreign to railroad purposes as to constitute an abandonment or an additional servitude not permissible under the right of title acquired for railroad purposes by condemnation or otherwise." Id. at 292.  The Court went on to say that the railroad may use its right of way "to contribute[] to the safe, economic, and efficient operation of the road" or "for any other building or erection which reasonably tends to facilitate its business of transporting freight and passengers, and by such use in

---

[17] The parties have stipulated that the Fleming deed, recorded in the Chickasaw County Recorder of Deeds, Book 80, Page 161, is the relevant conveyance instrument for the remaining portion of claim 233. The Fleming deed is a Category II source deed, which should be construed as granting fee title to the Railroad for the reasons set forth in Part B(2)(c) of this opinion.

no manner transcends the purposes and extent of the easement." Id.  The Court ultimately held that the construction and maintenance of facilities for the handling of oil "reasonably tend[ed] to facilitate [the railroad's] business of transporting the character of freight and does not constitute a misuse of the easement." Id.

Similarly, in Canton v. Canton Cotton Warehouse Co., 36 So. 266 (Miss. 1904), the Court stated that the railroad "has the right to do all things with its right of way, within the scope of its charter powers, which may be found essential or incidental to its full and complete use for the purpose for which it was acquired." Id. at 291.  That is to say, any uses "requisite for the convenient, safe, and successful conducting of their business and regular running of their trains" would be considered within the scope of their easement.  Id. at 292.  Applying these principles, the Court held that the subject railroad had the authority to lay a water conduit on its right of way, as water is "indispensable for the running of such a road." Id. at 294.

In light of the standards set forth in Weir and Canton, the Court finds that recreational trail use is outside the scope of the Railroad's easement.  The Railroad's primary purposes, as stated in the Ripley Charter, were to construct and maintain a rail line and to transport persons or property on that rail line.  1871 Miss. Laws 269.  The purpose of a recreational trail is fundamentally different.  It does not exist as a means of transportation but to allow the public to engage in outdoor recreation.  Thus, recreational trail use is not "a use consistent with the purposes for which the right of way was acquired." Weir, 101 So. at 292.  It is not even "incidental" to the purpose for which it was acquired.  Canton, 36 So. at 291.  As this Court has found previously, recreational trail use is simply "different in kind" from a use for railroad purposes.  Toews v. United States, 53 Fed. Cl. 58, 62 (2002), aff'd, 376 F.3d 1371 (Fed. Cir. 2004).

As with recreational trail use, railbanking also exceeds the scope of the Railroad's easement.  As this Court has found previously, "railbanking is too hypothetical and unlikely to serve as a railroad purpose." Capreal, Inc. v. United States, 99 Fed. Cl. 133, 146 (2011).  Here, MTH and MTR petitioned for an exemption from 49 U.S.C. § 10903 to abandon the rail line and to discontinue rail service.  See (Pls.' PFUF, Attach. 19, Ex. B); Joint Petition for Exemption, Docket Nos. AB-868X and AB-869X, S.T.B. (2004).  In support of their petition, MTH stated that it "decided to seek abandonment" in the face of "burdensome losses and expenses from continued operation, and with no further hope of resurrecting [certain] traffic volume." Id. at 4.  In their Draft Environmental and Historic Report, MTH and MTR observed that "[r]ail use of the line is declining.  There appears to be little prospect for locating rail-using businesses along the rail line." (Pls.' PFUF, Attach. 19, App. 9); Docket Nos. AB-868X and AB-869X, S.T.B. at 4 (March 16, 2004).  Thus, while the terms of the July 26, 2004 NITU preserve the possibility to reactivate rail service on the right of way, the possibility is simply too remote for railbanking to be considered a permissible railroad use.

In <u>Weir</u>, the Supreme Court of Mississippi suggested that the use of a railroad easement for non-railroad purposes may constitute an abandonment or an impermissible additional servitude.  101 So. at 292.  Under Mississippi law, when a railroad seeks to abandon its easement, fee title reverts back to the abutting property owners.  <u>Crum</u>, 601 So. 2d at 839 ("Where a railroad only has a right to an easement under a deed, abandonment of the right of way causes the title or right to the land to revert to the grantor, his heirs, his successors in title, or to the then owner of the subservient estate." (citing 74 C.J.S. <u>Railroads</u> § 117(e))).  In <u>Columbus and Greenville Ry. v. Dunn</u>, 185 So. 583 (Miss. 1939), the Supreme Court of Mississippi set forth the test to ascertain when a railroad will be deemed to have abandoned its right of way.  "'[A]n abandonment of an easement will be presumed where the owner of the right does, or permits to be done, any act inconsistent with its further enjoyment.'"  <u>Id.</u> at 585 (quoting 9 R.C.L. 813, § 69).  This can include "'ceasure of the use, coupled with any act indicative of an intention to abandon the right.'"  <u>Id.</u> (quoting <u>Scott v. Moore</u>, 37 S.E. 342 (Va. 1900)).  Moreover, because "abandonment is so largely a question of intention, all the facts and circumstances, and particularly the acts and conduct of the parties, tending to show or disprove the intention to abandon may be taken into consideration."  <u>Id.</u> at 586 (quoting 1 Am. Jur. § 11).

Here, aside from exceeding the scope of its easement, the Railroad unequivocally expressed an intent to renounce its interest in the right of way.  In their Draft Environmental and Historic Report, MTH and MTR stated that "[i]n the opinion of Holdings and Railroad, there is no reasonable alternative to the proposed abandonment and discontinuance because continued ownership and operation of the rail line would be unduly burdensome."  Docket Nos. AB-868X and AB-869X, S.T.B. at 3 (March 16, 2004).  Moreover, MTH and MTR actually rid themselves of their entire legal interest in these easements.  On July 18, 2008, MTH conveyed the railroad corridor to GM&O "for railbanking and interim recreational trail use" and "conveyed its right to reinstate rail service over that right-of-way to the Mississippi Transportation Commission."  (Def.'s Resp. to Pls.' Proposed Additional Facts 232-33, July 21, 2011.)  Conveying an interest in land to another party is clear evidence of abandonment, particularly when it is for a different use.  See <u>Glosemeyer v. United States</u>, 45 Fed. Cl. 771, 778 (2000).

In sum, under either theory—whether by exceeding the scope of its easements, or by expressing its intent to renounce its interest in the right of way—the Court finds that the Railroad abandoned its easements in the railroad corridor.  In addition, the STB's issuance of the July 26, 2004 NITU blocked the reversion of the easement to the fee simple landowners following abandonment.  Accordingly, Plaintiffs in Category III.A and Plaintiffs owning parcels 197, 198, and 199 are entitled to just compensation.

b.  Category III.B

Category III.B includes the following seven claims: 134, 135, 136, 137, 138, 139, and 140.  The parties agree that the Morphis deed[18] is the relevant conveyance deed for all seven claims.  See (Pls.' Mem. 45-46, June 20, 2011; Def.'s PFUF 2-3, July 21, 2011).  In addition, the parties agree that the Morphis deed is "basically identical" to the Flournay and Martin deeds.  (Pls.' Mem. 46, June 20, 2011; Def.'s Mem. 25, July 21, 2011.)  Accordingly, for the reasons stated previously, see discussion supra Part B(1)(a)-(b), the Court finds that the Railroad acquired fee title to the segment of the railroad corridor abutting parcels 134-140.

c.  Category III.C

Category III.C includes the following four claims: 31, 112, 170, and 196.

As to claim 31, the parties agree that the relevant conveyance instruments are the Cooper deed (Category I.C) and section 3094 of the 1906 Code of Mississippi (Category I.D).  See (Pls.' Mem. 46, June 20, 2011; Def.'s Mem. 25, July 21, 2011).  For the reasons stated in Part B(1)(c) of this opinion, the Court finds that the Railroad held fee title to the portion of claim 31 governed by the Cooper deed.  For the reasons stated in Part B(1)(d) of this opinion, it is inappropriate to resolve the remainder of claim 31 through summary judgment at this time.

As to claim 112, Plaintiffs contend that the relevant conveyance instrument is section 3094 of the 1906 Code of Mississippi.  (Pls.' Mem. 46, June 20, 2011.)  For its part, Defendant maintains that there is no relevant conveyance instrument because the parcel is not adjacent to the railroad corridor.  (Def.'s Mem. 25, July 21, 2011.)  Defendant argues in the alternative that if the Court finds that the parcel is adjacent to the railroad corridor and was acquired pursuant to section 3094, then the Court should still find in its favor for the reasons pertaining to Category I.D.  Id.  The Court concludes that factual disputes make it inappropriate to resolve claim 112 through summary judgment at this time.

As to claim 170, the parties appear to disagree on the relevant conveyance instrument.  Plaintiffs contend that the relevant conveyance instrument is the Fontaine deed recorded in Pontotoc County at Book 78, Page 197, (Pls.' Mem. 47, June 20, 2011), while Defendant contends that the relevant conveyance instruments are the Fontaine deeds recorded in Pontotoc County at Book 78, Page 197 and Book 100, Page 366, (Def.'s Mem. 26, July 21, 2011).  In either case, the parties agree, and the Court finds, that the deed(s) pertaining to claim 170 should be analyzed under Category II.

---

[18] The Morphis deed is recorded in the Pontotoc County Recorder of Deeds, Book 42, Page 350.

Accordingly, for the reasons set forth in Part B(2) of this opinion, the Court concludes that the Railroad acquired fee title to parcel 170.

As to claim 196, Plaintiffs say this parcel was part of the Gordon condemnation and should be added to claims 197 through 199 where Defendant stipulated that the Railroad held only easements. (Pls.' Mem. 47, June 20, 2011.) Defendant disagrees and instead claims that the Wages deed[19] is the relevant conveyance instrument. (Def.'s Mem. 26, July 21, 2011.) The Court concludes that factual disputes make it inappropriate to resolve claim 196 through summary judgment at this time.

### 4. Remaining Claims

The parties have stipulated that the Flournay deed[20] and the Holland deed[21] are the relevant conveyance instruments for an additional nine claims.[22] The Court finds that the Holland deed is the same in all material respects as the Flournay and Martin deeds and thus, the Court's findings in Part B(1)(a)-(b) of this opinion apply to those claims.

The parties have stipulated that the relevant conveyance instruments for claims 38, 39, and 40 are the Williams deeds.[23] (Def.'s Resp. to Pls.' Proposed Additional Facts 23-25, July 21, 2011.) Both of the Williams deeds convey "land," with one granting "the certain tract or parcel of land" and the other granting "the following described lands." Both are clear in conveying fee title, as neither contains additional language that could be construed as indicating the granting of an easement. Accordingly, the Court finds that under Mississippi law, the Williams deeds conveyed fee title to the Railroad.

The parties have stipulated that the Cruse deed (Category I.B)[24] and section 3094 of the 1906 Code of Mississippi (Category I.D) are the relevant conveyance instruments for claim 133. (Pls.' PFUF, Ex. A). For the reasons stated in Parts B(1)(b) and B(1)(d) of this opinion, the Court finds that the Railroad held fee title to the portion of claim 133 governed by the Cruse deed and that it is inappropriate to resolve the remainder of claim 133 through summary judgment at this time.

---

[19] The Wages deed is recorded in the Pontotoc County Recorder of Deeds, Book 78, Page 230.

[20] The Flournay deed is recorded in the Union County Recorder of Deeds, Book 6, Page 101.

[21] The Holland deed is recorded in the Union County Recorder of Deeds, Book 16, Page 143.

[22] These nine claims are: 4C, 4D, 4E, 4F, 13A, 13B, 14A, 14B, and 14C.

[23] The Williams deeds are recorded in the Union County Recorder of Deeds, Book 9, Page 287 and Book 16, Page 20.

[24] The Cruse deed is recorded in the Pontotoc County Recorder of Deeds, Book 42, Page 365.

<u>Conclusion</u>

Based upon the foregoing, the Court concludes that Plaintiffs' motion for summary judgment is DENIED, and Defendant's motion for summary judgment is GRANTED as to the following claims:

- all claims in Categories I.A, I.B, and I.C;
- all claims in Category II (except claims 197, 198, and 199);
- the portion of claim 233 for which the Fleming deed is the relevant conveyance instrument;
- claims 256 and 257;
- all claims in Category III.B;
- the portion of claim 31 for which the Cooper deed is the relevant conveyance instrument;
- claim 170;
- claims 4C-F, 13A-B, and 14A-C;
- claims 38, 39, and 40;
- the portion of claim 133 for which the Cruse deed is the relevant conveyance instrument.

In addition, the Court concludes that Plaintiffs' motion for summary judgment is GRANTED, and Defendant's motion for summary judgment is DENIED as to the following claims:

- claims 197, 198, and 199;
- the portion of claim 233 for which the "E.D. Proclamation" is the relevant conveyance instrument; and
- claims 234, 235B, 236, 237, 238A, 238B, 239, 240, 254, and 255.

For the remaining claims, the Court finds that material fact disagreements exist, making it inappropriate to resolve the claims through summary judgment at this time. The Court requests the parties to submit a joint status report on or before November 1, 2011, proposing further proceedings for the resolution of this case.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge